Elizabeth HAMERSTROM, Appellant,

v.

COMMERCE BANK OF KANSAS CITY, N.A., Davis Hamerstrom, Edward Hamerstrom, Eric Hamerstrom, the Unknown and Unascertained Beneficiaries of the Remainder of the Erle H. Smith Testamentary Trust, Respondents.

WD 42121.

Missouri Court of Appeals, Western District.

May 7, 1991.

Robert O. Lesley, Ace E. Rowley, Stinson, Mag & Fizzell, Kansas City, for appellant.

Frank J. Murphy, Kansas City, Guardian ad Litem for Unknown and Unascertained Beneficiaries of the Remainder of the Erle H. Smith Testamentary Trust.

Guy A. Magruder, Jr., Robert M. Beachy, Van Osdol, Magruder, Erickson & Redmond, Kansas City, for respondent Commerce Bank of Kansas City, N.A.

Davis Hamerstrom, pro se.

Edward Hamerstrom, pro se.

Eric Hamerstrom, pro se.

Before ULRICH, P.J., and SHANGLER and TURNAGE, JJ.

ULRICH, Presiding Judge.

Elizabeth Hamerstrom appeals from the trial court's judgment denying her petition for deviation to increase the amount that she receives monthly from a trust and for attorney fees. Mrs. Hamerstrom, a life-

beneficiary of the trust, acquired the consent of the trust's remaindermen, her husband and two sons, to her proposed deviation. The trial court determined that the unnamed issue of Mrs. Hamerstrom's sons were "beneficiaries" pursuant to § 456.590.2, RSMo 1986, and further determined that Mrs. Hamerstrom's proposed deviation failed to benefit these unnamed unborn issue as required by the statute. The trial court's judgment is reversed and the case is remanded with directions to the circuit court to enter judgment granting the requested deviation and awarding attorney fees and costs in the requested amounts.

Mr. Erle H. Smith died in 1966. Pursuant to provisions of his will, executed January 25, 1965, his property was converted to cash and, after payment of expenses and taxes, transferred to a bank to be held in trust. The will directed the trustee to pay Elizabeth Hamerstrom, as beneficiary, $150 per month so long as she shall live or until the corpus is exhausted. Upon Mrs. Hamerstrom's death, the testamentary trust is to terminate and the corpus is to be distributed to her husband, Davis Hamerstrom, if he survives. Should Mr. Hamerstrom not survive his wife, the will directs that the trust corpus be distributed equally to their two sons, Eric and Edward, or the balance to the survivor.[1] The trustee was not given express powers to increase the amount of Mrs. Hamerstrom's payments or to invade the corpus of the trust for her benefit.

Mrs. Hamerstrom filed a petition for deviation on April 14, 1989. The petition names as defendants Commerce Bank of Kansas City, the trustee, and the remaindermen: Davis Hamerstrom, Edward Hamerstrom, Eric Hamerstrom, and the unknown and unascertained beneficiaries of the remainder of Erle H. Smith's testamentary trust. The petition alleged unforeseen changes in Mrs. Hamerstrom's economic condition and in her personal circumstances since the establishment of the trust. These changes include inflation, Mr. Hamerstrom's retirement, and increased health care costs. The value of the trust at the time Mrs. Hamerstrom filed her petition for deviation was $425,000, which generates an income of approximately $26,000 per year. The trustee's fees amount to approximately $2,000 per year. Mrs. Hamerstrom sought a deviation by which the court would order the trustee to increase the monthly payments to her from $150 per month to $2,000 per month. Davis Hamerstrom, Eric Hamerstrom and Edward Hamerstrom consented to Mrs. Hamerstrom's proposed deviation. The trustee neither opposed nor supported the petition. The trial court appointed a guardian ad litem to represent the interests of the unknown and unascertained beneficiaries of the remainder of the trust. The guardian ad litem opposed the action, contending that the deviation did not benefit the trust's unascertained contingent remaindermen.

The trial court denied Mrs. Hamerstrom's request for deviation and her request for attorney fees, and she asserts five points on appeal. Mrs. Hamerstrom raises three points of trial court error that contest the denial of her requested deviation. She asserts that (1) the trial court erred in construing the term "beneficiaries," as used in § 456.590.2, to include persons with no expressly created interest in the trust. She also asserts that (2) the

---

1. The pertinent article of Mr. Smith's will states:

ARTICLE IV

My trustee shall hold said property so conveyed in trust for the benefit of ELIZABETH HAMERSTROM, Route 3, Roscoe, New York, and shall pay and turn over to the said ELIZABETH HAMERSTROM the sum of One Hundred and Fifty Dollars ($150.00) per month for so long as she shall live or until said trust fund shall be exhausted, whichever event shall first occur. In the event that the said ELIZABETH HAMERSTROM should die before said trust fund is exhausted, then the trust shall terminate at the time of her death and the trustee shall deliver all of the assets of the trust estate to DAVIS HAMERSTROM.

In the event that DAVIS HAMERSTROM predecease ELIZABETH HAMERSTROM, or if they should die as the result of a common disaster before said trust fund is exhausted, then the trust shall terminate at the time of the death of ELIZABETH HAMERSTROM and the trustee shall deliver all of the assets of the trust estate in two equal shares to ERIC HAMERSTROM and EDWARD HAMERSTROM, or the balance to the survivor of them.

court applied an incorrect standard when considering her attempt at common law to procure the deviation, and, cognate to this point, (3) because the diminished value of the payments she receives frustrates the settlor's purpose, the court erred in finding that the facts did not justify deviation at common law. Mrs. Hamerstrom raises two points of trial court error which contest the denial of attorney fees. She asserts (4) the court erroneously required that, prerequisite to granting attorney fees, the petitioner demonstrate the requested distribution would benefit the trust estate and, if such a finding is properly required, (5) the court erroneously held that the requested distribution would not benefit the trust estate.

## DEVIATION

### Application of § 456.590.2 RSMo 1986

■ Point (1) concerns the construction of § 456.590.2, which provides:

When all of the adult beneficiaries who are not disabled consent, *the court may, upon finding that such variation will benefit the* disabled, minor, *unborn and unascertained beneficiaries,* vary the terms of a private trust so as to reduce or eliminate the interests of some beneficiaries and increase those of others, to change the times or amounts of payments and distributions to beneficiaries, or to provide for termination of the trust at a time earlier or later than that specified by the terms.

(Emphasis added.) Mrs. Hamerstrom acknowledges that before a requested deviation can be granted, this statute requires a finding that the requested deviation would benefit unborn and unascertained beneficiaries. However, she argues that the unascertained persons in this case are not beneficiaries and that the portion of the statute protecting "unknown and unascertained beneficiaries," therefore, does not apply. Thus, she alleges the trial court erroneously interpreted the statute as requiring a finding that the requested deviation from the trust provisions would benefit the unnamed and unascertained potential survivors of Edward and Eric Hamerstrom.

A proper analysis of the issues requires some historical observations. Before the Supreme Court of Massachusetts decided the case of *Claflin v. Claflin,* 149 Mass. 19, 20 N.E. 454 (1889), American courts adhered to the English precedent that trust beneficiaries may terminate the trust at any time they agree to its termination, without regard to whether termination would in some measure frustrate the accomplishment of the settlor's purposes in establishing the trust. *See* P. Wiedenbeck, *Missouri's Repeal of the Claflin Doctrine—New View of the Policy Against Perpetuities?,* 50 Mo. L.Rev. 805, 808 (1985). The *Claflin* rule states that a trust cannot be terminated prior to the date specified by the terms of the trust where the material purpose of the settlor has not been attained, even if all the beneficiaries consent to its termination. Missouri follows the *Claflin* rule. *Thomson v. Union Nat'l Bank,* 291 S.W.2d 178, 182–83 (Mo. 1956).

Section 456.590.2 modifies the *Claflin* rule. The statute provides a mechanism for "adult beneficiaries who are not disabled" to vary, extend or eliminate a trust under circumstances where the settlor's purpose is not considered. However, deviation is precluded when certain classifications of protected beneficiaries exist and a court has not found that those variations desired by the qualified adult beneficiaries would benefit the protected beneficiaries.

The question presented is whether Edward and Eric Hamerstrom's unnamed, unborn and unascertained potential survivors are protected beneficiaries under § 456.590.2. Mrs. Hamerstrom, claiming that they are not, advocates a more narrow interpretation of the term "beneficiary" than does the Trustee. Mrs. Hamerstrom argues that a broader interpretation including Eric's and Edward's unnamed, unborn and unascertained potential survivors as beneficiaries under the statute would necessarily also include the settlor's heirs as beneficiaries since they would receive the trust assets if Davis, Eric and Edward Hamerstrom predecease Mrs. Hamerstrom without heirs. The statute, she contends,

does not contemplate such a broad definition. The guardian ad litem advocates the broader definition adopted by the trial court and argues that the unnamed, unborn and unascertained potential issue of Edward and Eric Hamerstrom are beneficiaries under the terms of the statute. No reported cases construe § 456.590.2.

The states are divided over the definition of "beneficiary." States which have adopted the Uniform Probate Code apply a definition providing that " '[b]eneficiary', as it relates to trust beneficiaries, includes a person who has any present or future interest, vested or contingent, and also includes the owner of an interest by assignment or other transfer...." Uniform Probate Code § 1–201(3) (1990).[2]

Other states have adopted a more narrow definition of "beneficiary" such as that found in *Lenzner v. Falk,* 68 N.Y.S.2d 699 (Sup.Ct.1947). In *Lenzner,* the court held that a remainderman is not a beneficiary of a trust during the life of a life tenant. *Id.* at 703–04. "Beneficiary," within a trust declaration authorizing invasion of principal for the support or use or benefit of "beneficiaries," applied only to those receiving income, not to remaindermen. *Id.* at 704. *See also In re Trusts of Campbell,* 258 N.W.2d 856, 861 (Minn.1977). This narrow definition is based on the precept that beneficiaries of trusts are only those receiving enjoyment of property while legal possession is held in another. Following the death of a life beneficiary, the remaindermen receive no benefit from the trust; they take ownership and legal possession of the corpus. They, therefore, have no enjoyment of the property while the life beneficiary receives trust benefits and the corpus is in legal possession of another. The broader definition found in the Uniform Probate Code, by contrast, encompasses any interest which remaindermen might have in the trust property.

Missouri courts have not defined "beneficiary" as the word is used in trusts. The trial court in this case relied on *Thomson,*

291 S.W.2d 178, to determine the trust's beneficiaries. In *Thomson,* the court refused to modify a trust at common law because the requested deviation would have frustrated the settlor's material purpose. *Id.* at 182–83. The trial court quoted the following language from *Thomson* :

> "The power to authorize deviations is exercised, primarily, in matters of administration and does not extend to the extinction or reduction of the interests of other beneficiaries."

*Id.* at 183. However, "other beneficiaries" in the testamentary trust in *Thomson,* the unborn and unascertained potential grandchildren of the life beneficiary, were identified within the document creating the trust. *Id.* at 180. The possible future grandchildren of Mrs. Hamerstrom were not identified in the Smith trust.

In construing § 456.590.2, this court must given the term "beneficiary" its plain and ordinary meaning. *Schneider v. State, Div. of Water Safety,* 748 S.W.2d 677, 678 (Mo. banc 1988). This court must presume that the legislature, in enacting § 456.590.2, intended a logical and reasonable result with substantive effect. *Brown Group, Inc. v. Administrative Hearing Comm'n,* 649 S.W.2d 874, 878 (Mo. banc 1983). Additionally, this court presumes that the legislature did not intend to enact an absurd law. *State ex rel. McNary v. Hais,* 670 S.W.2d 494, 495 (Mo. banc 1984).

In construing a will, the testator's intention must be determined by what the will actually says and not by what might be imagined the testator intended to say or would have said if he had decided to further explain his intentions. *See Boone County Nat'l Bank v. Edson,* 760 S.W.2d 108, 111 (Mo. banc 1988). The testamentary trust provides for the termination of the trust upon the death of Mrs. Hamerstrom and delivery of the corpus to Davis Hamerstrom. If Mr. Hamerstrom predeceases his wife, the corpus, upon the death of Mrs. Hamerstrom, is to be delivered in equal shares to Eric and Edward Hamerstrom,

**2.** The Uniform Probate Code has been adopted in fifteen states. Some variations may exist

resulting from the manner of adoption.

specifically named remaindermen. Should one of the named Hamerstrom sons predecease the other, the trust provision does not permit the heirs or surviving issue of the decedent brother to take the share that the decedent brother would have taken except for his death. Rather, the trust specifically provides that the decedent's share will be delivered to the surviving brother. The trust makes no specific provision for or mention of the "heirs" or "issue" of Eric and Edward Hamerstrom. The testator's intent to limit the distribution of his estate to those persons he specifically identified within the will is evident.

The definition of "beneficiary" proffered by the trustee and guardian ad litem requires that the trial court protect the potential interests of unascertained individuals not mentioned and not provided for by the testator in establishing the trust. Such a definition apparently necessitates that the trial court also protect the potential interest of the testator's heirs as the corpus may revert back to testator's heirs if all remaindermen predecease the life beneficiary without issue. Such an interpretation creates the unreasonable and illogical result of § 456.590.2 restricting virtually any proposed deviation of a trust and, thus, denies the statute any substantive effect. As the trial court pointed out with respect to Mrs. Hamerstrom's request, virtually any proposed deviation would diminish the potential interests of unnamed, unborn and unascertained remaindermen. Rather, "beneficiaries," as that term is used in § 456.590.2, refers to those persons, including unborn and unascertained issue, individually named or who are included in a named class, identified by the testator in the testamentary trust and for whom the testator expressed intent to make provision. This definition gives the statute substantive effect and protects those individuals the testator intended to benefit as evidenced by his efforts to identify individuals or a class within the instrument.

Section 456.590.2 authorizes a court to vary the terms of a private trust when all adult beneficiaries consent and after making a finding that the variation will benefit minor, unborn, and unascertained benefi-

ciaries. Having determined that the possible issue of Eric and Edward Hamerstrom are not beneficiaries contemplated within the statute, and no other protected beneficiaries being identifiable, the agreement of the adult beneficiaries, present and contingent, was sufficient under § 452.590.2 to modify the trust as requested. Absent a legal reason to deny Mrs. Hamerstrom's requested deviation, the trial court should have granted plaintiff's petition to modify the trust provisions.

Mrs. Hamerstrom sought deviation under common law standards in addition to her request under § 456.590.2. Because deviation should have been granted pursuant to § 456.590.2, this court need not consider whether deviation at common law was appropriate. Points (2) and (3) are, therefore, not considered.

## ATTORNEY FEES

■ Mrs. Hamerstrom also sought attorney fees in the sum of $11,457.50 and an additional $1,805.61 expended as costs in litigating her case. The trial court declined to award the requested attorney fees and costs. Mrs. Hamerstrom alleges the court erred in requiring a finding that the distribution would benefit the trust estate before awarding attorney fees to the beneficiary, point (4), and, if the court's holding was correct, in finding that the requested deviation would not benefit the trust, point (5).

■ The trial court relied on *St. Louis Union Trust Co. v. Kaltenbach*, 353 Mo. 1114, 186 S.W.2d 578, 583 (1945), stating that a trust beneficiary may recover reasonable attorney fees from the trust estate where the efforts of the beneficiary result in real benefit to the estate. A trust instrument which is so ambiguous that two or more persons may fairly make adverse claims to the fund is an example of a situation justifying awarding costs and attorney fees. *Coates v. Coates*, 316 S.W.2d 875, 878 (Mo.App.1958). Costs and attorney fees have also been allowed where a trustee's duties are ambiguous and he sues for judicial construction of the testamentary trust. *First Nat'l Bank v. Danforth*,

523 S.W.2d 808, 823 (Mo.1975), *cert. denied*, 421 U.S. 992, 1016, 95 S.Ct. 1999, 2424, 44 L.Ed.2d 483, 685 (1975). However, where a challenge is made by a party solely for his own benefit and no benefit to the trust estate is demonstrated, an award for attorney fees payable from the trust estate cannot normally be made. *Kaltenbach*, 186 S.W.2d at 583; *Trautz v. Lemp*, 334 Mo. 1085, 72 S.W.2d 104, 108 (banc 1934). Mrs. Hamerstrom's proposed deviation would diminish the estate by $22,200.00 per year for the remainder of her lifetime, estimated by her own exhibit to be another fourteen years. The court held that, over that period of time, the estate, at its present earning rate, would be diminished in excess of $300,000.00. Based upon this evidence, the trial court concluded that no benefit to the trust estate had been demonstrated.

Mrs. Hamerstrom argues that enactment of § 456.590.2 makes the traditional requirement that a party demonstrate a benefit to the estate before attorney fees can be awarded inapplicable in her case. While the statute does not expressly vest beneficiaries with the authority to pay attorney fees from the trust's assets, the beneficiaries are granted extensive powers including the ability to terminate the trust. The authority to pay attorney fees from the trust's assets must also be implicitly encompassed within these extensive powers granted to the beneficiaries by § 456.590.2. Since all present and contingent adult beneficiaries, the only beneficiaries of the trust, have expressed their desire to modify the trust provisions increasing benefit payments to Mrs. Hamerstrom, they can also modify the trust provisions to pay attorney fees subject to the trial court's order, which they have chosen to do.

The judgment is reversed and the case is remanded with directions to the circuit court to enter judgment granting the requested deviation and awarding attorney fees and costs in the amounts requested.

All concur.