## KATHRYN E. GREENE ET AL.
## *v.* KATHRYN H. GREENE

Superior Court, Judicial District of New Haven
File No. CV-12-6027420

Memorandum filed June 5, 2013

*Proceedings*

*Eric L. Sussman,* for the plaintiffs.

*John S. Bennet,* for the defendant.

BLUE, J. The Motion For Partial Summary Judgment now before the court involves an important issue in the law of trusts. Under what circumstances can the

trustees and beneficiaries of a trust compel the judicial termination of the trust to settle litigation concerning an estate? For the reasons set forth below, the plaintiffs in this case have not followed a legally appropriate path to achieve this goal.

The materials submitted by the parties establish the following facts. Richard B. Greene ("Testator"), a resident of Guilford, died on September 28, 2006, leaving a substantial estate and several beneficiaries to fight over it. One of those beneficiaries was his wife, Kathryn H. Greene ("Wife"). The other principal beneficiaries were his four adult children from earlier marriages: Kathryn E. Greene, Philip J. Greene, Valerie Bennouna-Greene, and Stephanie Greene ("Children"). Two of the Children had children of their own who were grandchildren of the Testator ("Grandchildren").

On March 21, 2006, the Testator executed both a will ("Will") and the Richard B. Greene Revocable Trust ("Trust"). The Testator then made an inter vivos transfer of his real property (the bulk of his estate) to the Trust. This property consists of three improved properties in Guilford located at 21, 25, and 29 Whitfield Street and a fourth (unimproved) parcel located on Broad Street in Guilford.

The Will bequeaths all of the Testator's tangible personal property to the Wife. The entire residuary estate is bequeathed to the Trust. (In fact, however, most of the residuary estate had been transferred to the Trust during the Testator's lifetime.)

The Trust contains the following provisions (somewhat simplified here) relevant to this case:

Article II.B. The real property located at 29 Whitfield Street is to be transferred to the Wife.

Article III.A. The residuary estate is held in a marital trust. The Wife receives an amount of 2.5% of the fair

market value of the trust principal annually. (Since the Trust has limited liquid assets, counsel advise the court that, in practice, the Wife receives a 2.5% annual share of the real property held by the Trust.)

Article III.B. On the death of the Wife, the property of the Trust is divided into four equal shares. Each share is to be held in trust for one of the Children.

Article III.C. On the death of a Child, that Child's share continues to be held in trust for that Child's descendants.

Article IV. The Trustees "are authorized in their discretion and for any reason which they deem sufficient to terminate any trust under Article III.C of this document and distribute any remaining trust property to the eligible income beneficiary . . . ." Significantly, the Trust gives no corresponding power to the trustees to terminate the marital trust established under Article III.A.

The Children claim that the Will is the product of undue influence. The status of the Will is presently before the Probate Court.

On March 21, 2007, the trustees of the Trust, the Children, and the Grandchildren signed a Mediation Agreement ("Agreement") intended to resolve their differences. The Agreement (somewhat simplified here) provides that the properties located at 25 and 29 Whitfield Street will be transferred to the Wife, and the properties located at 21 Whitfield Street and Broad Street will be transferred to the Children. Anticipating that, following implementation of the Agreement, the Marital Trust will "qualify under Connecticut law as an uneconomical trust," any balance remaining in the Marital Trust is to be transferred to the Wife "outright and free of trust." The Agreement is signed by the co-trustees of the Trust, the Children, and the Grandchildren.

On February 20, 2012, the present action was commenced by service of process. The Children and Grandchildren are the plaintiffs, and the Wife is the defendant.

The plaintiffs' Amended Complaint consists of eight counts. The first two counts are the only counts involved in the motion now before the court. The First Count alleges breach of contract. It specifically alleges that the Wife has "repeatedly failed to perform her obligations" under the Agreement and that her "failure and refusal to perform her obligations under the Mediation Agreement constitute a breach of contract." The Second Count alleges breach of the implied covenant of good faith and fair dealing. It specifically alleges that the Wife "has willfully, intentionally and in bad faith deprived Plaintiffs of the benefits set forth in the Mediation Agreement."

The Motion For Partial Summary Judgment now before the court was filed by the Wife on March 27, 2013. The Motion seeks summary judgment as to the First and Second Counts of the Amended Complaint. With respect to the First Count, the Motion contends that the "distribution and termination" required by the Agreement "is contrary to the terms of the trust and . . . illegal under Connecticut law." The Motion contends that the Second Count "constitutes a claim springing from an illegal contract and is, therefore, unenforceable by the court . . . ." The Motion was argued on June 3, 2013. The plaintiffs filed a supplemental brief on June 4, 2013.

The procedural posture of this case is crucial to the outcome of the Motion. It is well established that, " 'If owing to circumstances not known to the settlor and not anticipated by him the continuance of the trust would defeat or substantially impair the accomplishment of the purposes of the trust, the court will direct or permit the termination of the trust.' " *Connecticut*

*Bank & Trust Co.* v. *Coffin*, 212 Conn. 678, 705, 563 A.2d 1323 (1989), quoting 2 Restatement (Second), Trusts § 336 (1959). A court of equity always retains the power to terminate a trust under appropriate circumstances. *Adams* v. *Link*, 145 Conn. 634, 638, 145 A.2d 753 (1958). This can only be done, however, under certain conditions. As our Supreme Court has explained, "Conditions precedent which should concur in order to warrant termination of a testamentary trust by judicial decree are (1) that all the parties in interest unite in seeking the termination, (2) that every reasonable ultimate purpose of the trust's creation and existence has been accomplished, and (3) that no fair and lawful restriction imposed by the testator will be nullified or disturbed by such a result." Id.

*None* of the *Adams* "conditions precedent" exist in this case. (1) While all of the parties in interest signed the Agreement, not all of them presently unite in seeking termination of the Trust. In the Motion For Partial Summary Judgment now before the court, the Wife seeks to have the termination provisions of the Agreement held "illegal under Connecticut law." (2) Not every reasonable ultimate purpose of the Trust's creation and existence has been accomplished. The purpose of Article III.A of the Trust is to provide the Wife with an amount not to exceed 2.5% of the Trust principal every year for the rest of her life. This has not yet been accomplished. (3) The Testator's restriction on the amount to be paid to the Wife just described was fair and lawful. *Hill* v. *Travelers Bank & Trust Co.*, 125 Conn. 640, 648, 7 A.2d 652 (1939). That restriction would be disturbed by the termination of the Trust during the Wife's lifetime.

In any event, this is not a case in which the parties in interest have petitioned a court of equity to terminate the Trust. The procedural posture of this case is quite different. The status of the Will is presently a matter

before the Probate Court. At one point, the parties in interest signed a private agreement to terminate the Trust, and now some—not all—of the parties have brought this action to enforce the Agreement. Although the goal of settling a will contest is no doubt admirable, this is not a legally appropriate means of terminating a trust.

*Adams* explains the rationale behind this restriction. "The plaintiffs . . . claim that whatever the rule may be in cases involving no will contest, a more liberal rule applies where, as here, the termination of the trust is a part of the settlement of such a contest. . . . The rationale of our rule as to the power to set aside or terminate a trust is not, however, such that its applicability would be affected by the mere fact that the motivation of a trust termination agreement is the compromise of a will contest. It is true that such contests are not infrequently compromised by agreements involving the transfer of legacies or devises, in whole or in part, by beneficiaries under the will. Where such gifts are alienable this is permissible, since no violence is done to the provisions of the will. But that is not this case. Here the provisions of the will itself are being drastically changed so as to abolish a trust contrary to our rule. This cannot be done." *Adams* v. *Link*, supra, 145 Conn. 643.

The rationale of the *Adams* rule was subsequently amplified by the Supreme Court of Missouri. "The basic reason for the exception which prohibits the termination of a trust by a family settlement is that a testator has the right to dispose of his property by will with restrictions, and he may divide a bequest into an estate for life and an estate in remainder. When he does so by creating a trust for the benefit of one person with the remainder to others, no beneficiary has any right to immediate possession of the corpus of the trust, and having no such right he cannot by agreement create a

transferable right." *St. Louis Union Trust Co.* v. *Conant*, 499 S.W.2d 761, 765–66 (Mo. 1973).

The rationale of *Adams* and *Conant* is persuasive in the context of the present case. The Testator had a right to dispose of his property with restrictions, and he did so in the Trust. The Trusts divides the Testator's estate into a marital trust for the life of the Wife and an estate in remainder for the Children. Significantly, under Article IV of the Trust, the Trustees are authorized to terminate the Trust at any time *after* the death of the Wife, but they are given *no* such corresponding power to terminate the Trust *during* the life of the Wife. As long as the Wife remains alive, no beneficiary has any right to immediate possession of the corpus of the Trust. Having no such right, neither any individual beneficiary nor all of them combined could by agreement create a transferable right. Under these circumstance, the Agreement cannot be judicially enforced.

The plaintiffs' supplemental brief argues that the Motion For Partial Summary Judgment now before the court should be denied because the Wife "cannot accept benefits under the Agreement she signed, including purported resolution of certain legal claims such as claims of undue influence, then seek to compel performance of that Agreement, and now question its validity." Although the unclean hands of a litigant may dissuade a court from giving that party equitable relief in some cases, the plaintiffs' argument is unpersuasive in the context of the present case. The behavior of the parties, whether virtuous or problematic, does not alter the underlying fact that the Agreement is judicially unenforceable under Connecticut law. The behavior of the parties cannot change this fact. When the parties signed the Agreement, the Testator was not at the table. Just as the Trust's express provisions cannot be altered by the private agreement of parties who have no immediate

right to the corpus of the Trust, those provisions cannot be altered by the behavior of the parties.

The task of the court is to enforce the provisions of the Trust unless the "conditions precedent" set forth in *Adams* are established. Those "conditions precedent" have not been established here. Under these circumstances, neither the breach of contract claim asserted in the First Count of the Amended Complaint nor the claim for breach of the implied covenant of good faith and fair dealing asserted in the Second Count can succeed. The contract forming the basis for each of these claims cannot be judicially enforced.

The Motion For Partial Summary Judgment is granted.